2025-1192

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

_____

IN RE: ROBERT BENSON AYLOR, I, LEIGH HEATHER MAKOVER,
ROBYN AYLOR HAINES,

APPELLANTS.

_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in 15/950,246.

_____

BRIEF FOR APPELLEE—ACTING DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

AMY J. NELSON
Acting Solicitor

KAKOLI CAPRIHAN
MICHAEL S. FORMAN
MONICA B. LATEEF
Associate Solicitors

Office of the Solicitor
U.S. Patent & Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035
*Attorneys for the Director of the
U.S. Patent & Trademark Office*

April 4, 2025

## REPRESENTATIVE CLAIMS

41. A product which can be used in creating a dosage for minimizing the harmful effects of a malignant cancer tumor, said product consisting essentially of the ingredients betaine and vitamin C, and said product also having protective packaging for providing protection for each of said ingredients from moisture, air and contamination and prevention of interaction of said ingredients during storage.

44. The product of Claim 41 wherein each of the said ingredients betaine and vitamin C is in a bulk package with instructions to measure out at least about one gram of each of said ingredients and mix them in an aqueous medium to create a single dosage, and to promptly take said dosage.

SAppx27.

# TABLE OF CONTENTS

I.    STATEMENT OF THE ISSUES ............................................................... 1

II.   STATEMENT OF THE CASE ................................................................ 4

    A.    The '246 application claims a product consisting
           essentially of betaine and vitamin C and having
           protective packaging. ........................................................ 6

    B.    The Prior Art ..................................................................... 8

        1.    Williams teaches products containing betaine
                and vitamin C and having protective
                packaging. ............................................................. 8

        2.    Time teaches the cost benefits of selling
                products in bulk and allowing customers to
                apportion the amount of wanted product ................. 8

    C.    The prosecution history of Aylor's claims. ................... 9

        1.    The Examiner's rejection of Aylor's claims
                over Aylor's prior applications. ............................. 9

        2.    The Board's affirmance of the Examiner's
                rejections and issuance of new rejections
                finding claims anticipated by Williams and
                obvious over Williams and Time. ....................... 12

        3.    The Board's decision on rehearing denied
                Aylor's requested relief and reaffirmed the
                Board's new grounds. ......................................... 16

III.  SUMMARY OF THE ARGUMENT ..................................................... 18

IV.  ARGUMENT ....................................................................................... 20

    A.    Standard of Review ....................................................... 20

    B.    The Board's affirmance of the Examiner's rejections
           of all the pending claims was proper. ......................... 22

C.    The Board's determination that Williams anticipates representative claim 41 is supported by substantial evidence.......................................................26

D.    Substantial evidence supports the Board's determination that representative claim 44 is obvious over Williams and Time. .................................30

E.    Aylor's additional arguments lack merit.................................32

    1.    The Board correctly issued a new ground of rejection and Appellants exercised their opportunity to be heard.......................................32

    2.    The Court lacks jurisdiction to decide Aylor's patent term adjustment request. ....................................34

V.    CONCLUSION................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aller,*
220 F.2d 454 (CCPA 1955) ............................................................... 15, 32

*In re Bayer Aktiengesellschaft,*
488 F.3d 960 (Fed. Cir. 2007)............................................................ 22

*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.,*
289 F.3d 801 (Fed. Cir. 2002).......................................................... 14, 27

*Consol. Edison Co. v. NLRB,*
305 U.S. 197 (1938) .......................................................................... 21

*In re De Lajarte,*
337 F.2d 870 (CCPA 1964) ................................................................ 27

*Droplets, Inc. v. E\*TRADE Bank,*
887 F.3d 1309 (Fed. Cir. 2018)......................................................... 22, 25

*In re Ethicon, Inc.,*
844 F.3d 1344 (Fed. Cir. 2017).......................................................... 32

*In re Gartside,*
203 F.3d 1305 (Fed. Cir. 2000)......................................................... 21

*In re Google Tech. Holdings LLC,*
980 F.3d 858 (Fed. Cir. 2020)........................................................... 29, 31

*In re Hengehold,*
440 F.2d 1395 (CCPA 1971) .............................................................. 23

*In re Jolley,*
308 F.3d 1317 (Fed. Cir. 2002).......................................................... 22

*Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.,*
741 F.3d 1359 (Fed. Cir. 2014).......................................................... 20, 24

*In re Morris,*
    127 F.3d 1048 (Fed. Cir. 1997) ............................................................. 21

*In re Mouttet,*
    686 F.3d 1322 (Fed. Cir. 2012) ............................................................. 21

*PPG Industries v. Guardian Industries Corp.,*
    156 F.3d 1351 (Fed. Cir. 1998) ....................................................... 14, 27

*In re Robertson,*
    169 F.3d 743 (Fed. Cir. 1999) ............................................................. 26

*In re Schreiber,*
    128 F.3d 1473 (Fed. Cir. 1997) ............................................................. 21

*In re Self,*
    671 F.2d 1344 (CCPA 1982) ............................................................. 29

*In re Sullivan,*
    362 F.3d 1324 (Fed. Cir. 2004) ............................................................. 20

*Teva Pharms. USA, Inc. v. Sandoz, Inc.,*
    574 U.S. 318 (2015) ............................................................. 21

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474 (1951) ............................................................. 21

*In re Watts,*
    354 F.3d 1362 (Fed. Cir. 2004) ............................................................. 20

*In re Zierden,*
    411 F.2d 1325 (CCPA 1969) ............................................................. 14

## Statutes

5 U.S.C. § 706(2) ............................................................. 20

5 U.S.C. § 706(2)(E) ............................................................. 21

28 U.S.C. § 1295(a) ............................................................. 35

35 U.S.C. § 2(a)(1) ....................................................... 32, 33

35 U.S.C. § 2(b)(2)(A) ............................................................. 33

35 U.S.C. § 6 ............................................................................... 23

35 U.S.C. §§ 101-103, .............................................................. 33

35 U.S.C. § 102(a)(1) ........................................................... 5, 34

35 U.S.C. § 102(b) .................................................................... 5

35 U.S.C. § 103 ............................................................... *passim*

35 U.S.C. § 120 ............................................................... *passim*

35 U.S.C. §§ 131-134 .............................................................. 33

35 U.S.C. § 154(b) ................................................................. 34

35 U.S.C. § 154(b)(3)(B)(ii) ................................................... 35

35 U.S.C. § 154(b)(4) ............................................................. 35

## Other Authorities

37 C.F.R. § 1.76 ............................................................. *passim*

37 C.F.R. § 1.76(b)(5) ................................................9, 22, 23, 24

37 C.F.R. § 1.78 ............................................................. *passim*

37 C.F.R. § 1.78(d)(2) ..............................................9, 22, 23, 24

37 C.F.R. § 1.78(d)(3)(i) .......................................................... 9

37 C.F.R. §  1.78(d)(3)(ii) ....................................................... 9

37 C.F.R. § 1.78(e) ................................................................. 10

37 C.F.R. § 1.181 ................................................................... 23

37 C.F.R. § 1.705 ................................................................... 35

37 C.F.R. § 41.50(b) ......................................................*passim*

24 Fed. Reg. 10332, 10345 (Dec. 12, 1959) ............................. 33

69 Fed. Reg. 49960, 49965 (Aug. 12, 2004) ............................. 33

76 Fed. Reg. 72270, 72276-79 (Nov. 22, 2011) ........................................... 33

MPEP § 211.02 ....................................................................................... 13

MPEP § 211.04 ....................................................................................... 13

MPEP § 706.01 ....................................................................................... 23

MPEP § 1201 .......................................................................................... 23

## STATEMENT OF RELATED CASES

The Director is not aware of any appeal in connection with this application that has previously been before this or any other court, or of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## STATEMENT OF JURISDICTION

The Patent Trial and Appeal Board issued its Decision on Appeal on June 26, 2024, and denied rehearing on September 19, 2024. SAppx1-23. Appellants timely filed a Notice of Appeal on November 14, 2024. This Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## I.    STATEMENT OF THE ISSUES

Appellants (or collectively, "Aylor") seek claims to a product containing betaine and vitamin C. Representative claim 41 recites a product consisting essentially of these two ingredients and having protective packaging to protect each ingredient from moisture, air, and contamination and to prevent interaction of the ingredients during storage. Representative claim 44, which depends from claim 41, further recites that each of the betaine and vitamin C is in a bulk package with instructions to measure out at least about one gram of each of said ingredients and mix them in an aqueous medium to create a single dosage, and to promptly take said dosage.

The Board affirmed the Examiner's rejections of all pending claims as anticipated or obvious over publications of Aylor's prior patent applications (alone or in combination with other references). Although Aylor argued to the Board that they had claimed the benefit of priority to those applications, and thus they are not prior art, Aylor repeatedly failed to correctly file an Application Data Sheet (ADS) to claim such a priority benefit during the prescribed time-period. Without a compliant ADS, no priority claim was established.

The Board also issued two new grounds of rejections finding a large subset of the claims (all but claims 48 and 53) unpatentable. First, it found that Williams anticipates representative claim 41 because Williams teaches a multivitamin dry powder composition having betaine and vitamin C, among other ingredients, in protective packaging that protects the composition against moisture and air. In construing claim 41, the Board determined that (1) the preamble, which recites "a product which can be used in creating a dosage for minimizing the harmful effects of a malignant cancer tumor" is not limiting because it recites a statement of intended use; (2) "consisting essentially of" encompasses inclusion of additional ingredients besides betaine and vitamin C, as the specification does not indicate what, if any, ingredients could materially affect the claimed product; and (3) "protective packaging" includes products where betaine and vitamin C are in the same packaging and not separated, as the specification discloses multiple configurations for packaging, including where the components are in a single packet and protected.

Second, the Board found representative claim 44 obvious over Williams in combination with Time. Time teaches that it was well-known to sell products in bulk that can be apportioned by customers and that such bulk products are less expensive. The Board determined that it would

have been obvious to an ordinary skilled artisan to package the powder product of Williams, containing vitamin C and betaine, in a bulk form, with multiple grams of product, because such a bulk product would be cheaper, and the amounts were controllable by a consumer. The Board also noted that where the general conditions of a claim are known, it is not inventive to discover the optimum or workable ranges by routine experimentation. Following the Board's decision, Aylor sought rehearing rather than reopening prosecution. The Board considered Aylor's arguments, denied the requested relief, and maintained the rejections.

Separately, Aylor seeks patent term adjustment (PTA) based on an allegedly improper notice of abandonment. But PTA is determined only once a patent is ready to issue. No patent has yet issued, and jurisdiction over PTA challenges lies with the United States District Court for the Eastern District of Virginia. Aylor's request is therefore premature and not properly before this Court.

The issues on appeal are:

(1) Whether the Board's affirmance of the Examiner's rejection of all pending claims is correct when Aylor failed to file a compliant ADS and thus failed to establish priority;

3

(2) Whether the Board correctly construed representative claim 41, such that the preamble is not limiting, the term "consisting essentially of" does not exclude additional ingredients, and the "protective packaging" does not require separation of the ingredients;

(3) Whether substantial evidence supports the Board's finding that representative claim 41 is anticipated by Williams;

(4) Whether substantial evidence supports the Board's finding that representative clam 44 is obvious over Williams and Time;

(5) Whether Aylor had a fair opportunity to respond to the Board's new grounds of rejection under 37 C.F.R. § 41.50(b); and

(6) Whether this Court lacks jurisdiction over, and should therefore dismiss, Appellants' premature claim for patent term adjustment.

This Court should decide all six issues in the affirmative. If the Court affirms the Board on the first issue, which disposes of all the claims pending in Aylor's application, the Court need not reach issues two through five.

## II.    STATEMENT OF THE CASE

This appeal arises from the examination of claims 41-53 (SAppx27) of U.S. Patent Application No. 15/950,246 (the '246 application) (SAppx44-

66).[1] The Examiner rejected the pending claims on four grounds: (1) claims 41-47 and 49-52 under 35 U.S.C. § 102(a)(1) as anticipated by Aylor '240[2]; (2) claims 41, 43, 46, 47, and 49-52 under 35 U.S.C. § 102(a)(1) as anticipated Aylor '845[3]; (3) claims 41, 43, 46, 47, and 49-52 under 35 U.S.C. § 102(b) as anticipated by Aylor '941[4]; and (4) claims 48 and 53 under 35 U.S.C. § 103 as obvious over Aylor '240, PubChem[5], and Henke[6]. SAppx4; SAppx687-700; SAppx793-805. On appeal, the Board affirmed the Examiner's rejections. SAppx1-7. The Board also issued two new grounds of rejection as to the following claims: (1) claims 41, 43, 46, 47, 49-52 under 35 U.S.C. § 102(a)(1) as anticipated by Williams[7]; and (2) claims 42, 44, and 45 under 35 U.S.C. § 103 as obvious over Williams and Time[8]. SAppx8-14. The Board considered Aylor's request for rehearing but denied the requested relief. SAppx17-23. This appeal followed.

---

[1] Citations to the Supplemental Appendix are denoted as "SAppx__." Citations to Aylor's opening brief (ECF No. 11-1) are denoted as "Br. at __."

[2] Aylor et al., Pub. No. US 2014/0275240 Al.

[3] Aylor et al., Pub. No. US 2009/0042845 Al.

[4] Aylor et al., Pub. No. US 2007/0072941 Al.

[5] PubChem, https://pubchem.ncbi.nlm.nih.gov/compound/Betaine 1-63 (accessed June 28, 2022).

[6] Henke et al., Pub. No. US 2009/0314664 Al.

[7] Williams et al., U.S. Patent No. 5,597,585. SAppx969-973.

[8] Time Magazine, *Buying in Bulk,* p. 58 (July 1983). SAppx974-975.

A.    **The '246 application claims a product consisting essentially of betaine and vitamin C and having protective packaging.**

Beets and citrus fruits have historically been used and studied in the treatment of cancer. SAppx44 at ¶ 3. One of the compounds found in beets is betaine, or trimethylglycine. *Id.* at ¶ 8. The '246 application relates to products containing betaine and vitamin C. SAppx46 at ¶ 6. The application explains that while the combination of betaine (trimethylglycine) and vitamin C (ascorbic acid) does not cure cancer, such a combination can be used to minimize the risk and effect of cancer in mammals. SAppx45 at ¶ 4-5.

The application indicates that the amount of betaine and vitamin C in the disclosed product can vary but are "typically above about one gram a day of each of the betaine and vitamin C." SAppx47 at ¶ 13. The application observes that "betaine and vitamin C can both be used at relatively high levels, due to the extensive inherent safety record of both of these compounds." SAppx46 at ¶ 6.

The application also states that the disclosed product "should have packaging for providing protection from moisture and contamination," and that "betaine is best maintained by keeping moisture away and preferable, especially for bulk betaine powder by keeping it refrigerated." SAppx62 at

¶ 102. The application describes single and multi-dose packaging and that such packaging can be foil or any material with barrier properties. SAppx63 at ¶ 106. Further, the packaging "can be either single packets for each ingredient (most preferred), single packets for both ingredients (desirable as long as the ingredients are stable)." SAppx49 at ¶ 30. And that "it can be desirable to provide the betaine and/or vitamin C in single dosage form." *Id*. The application further notes that the form of the product can be "tablet, pill, lozenge, capsule, etc., or powders or crystals in packages, especially packages that provide protection from moisture." *Id*.

Claims 41 and 44, which are representative of the claims on appeal, read as follows:

> 41. A product which can be used in creating a dosage for minimizing the harmful effects of a malignant cancer tumor, said product consisting essentially of the ingredients betaine and vitamin C, and said product also having protective packaging for providing protection for each of said ingredients from moisture, air and contamination and prevention of interaction of said ingredients during storage.
>
> 44. The product of Claim 41 wherein each of the said ingredients betaine and vitamin C is in a bulk package with instructions to measure out at least about one gram of each of said ingredients and mix them in an aqueous medium to create a single dosage, and to promptly take said dosage.

SAppx27.

### B.    The Prior Art

#### 1.    Williams teaches products containing betaine and vitamin C and having protective packaging.

Williams discloses a vitamin/mineral nutritional mixture in the form of a dry powder. SAppx969 at abstract. The vitamin/mineral mixture comprises betaine and vitamin C, among other vitamins and minerals. Appx970 at 2:3-25. In particular, Williams teaches a composition with 4,000 to 5,000 mg of vitamin C and 120 to 130 mg of betaine. *Id*. Williams also teaches that the composition can be "reduced to a dry powder that is sufficient for a daily dose and is enclosed in a moisture-proof and air-proof package." *Id*. at 2:30-34. Further, the composition can be sealed in a "metal foil pouch so that neither moisture or air can get to the composition until it is ready for use." SAppx972 at 6:60-65.

#### 2.    Time teaches the cost benefits of selling products in bulk and allowing customers to apportion the amount of wanted product.

Time discloses that selling products in bulk offers cost benefits and permits customers to apportion the amount of product they want to have. SAppx974. Time teaches that providing products in bulk is an extraordinary way to save money. SAppx975.

### C.    The prosecution history of Aylor's claims.

#### 1.    The Examiner's rejection of Aylor's claims over Aylor's prior applications.

The Examiner rejected all the pending claims as unpatentable over publications of Aylor's prior-filed applications (alone or in combination with other prior art of record).  SAppx682-701; *see also* SAppx785-807.

Aylor did not contest the substance of the rejections but, instead, argued that the Examiner erred in treating the prior applications as prior art because Aylor had claimed priority to them. The Examiner determined, however, that Aylor had failed to correctly file an Application Data Sheet (ADS), as required under 35 U.S.C. § 120 and 37 C.F.R. §§ 1.76 and 1.78, to claim such a benefit of priority. SAppx682-684; SAppx690-700.

As the Examiner explained, to claim the benefit of domestic priority for applications filed after September 16, 2012, an applicant must file an ADS that includes the *U.S. application number* of each earlier-filed application. SAppx682; *see also* 35 U.S.C. § 120; 37 C.F.R. § 1.76(b)(5); 37 C.F.R. § 1.78(d)(2). Further, to be timely, the claim for priority must be made during the pendency of the application being examined and within (the later of) 16 months from the filing date of the earliest-filed application or 4 months from the filing of the later-filed patent application. SAppx682; 37 C.F.R. §§ 1.78(d)(3)(i)-(ii). The Examiner also noted that a benefit claim

filed after the required time-period may be accepted if it is accompanied by a petition under 37 C.F.R. § 1.78(e). SAppx683.

Here, the Examiner found that when Aylor filed the '246 application and the accompanying ADS on April 11, 2018, Aylor failed to identify any (domestic) priority applications by their assigned U.S. application number. SAppx684; SAppx36. Instead, Aylor only listed publication numbers on the ADS (e.g., 20090042845 A1). *Id.* The Examiner further found that, when the USPTO issued the receipt confirming submission of the '246 application, Aylor was notified that they had not established any domestic benefit to a prior application. SAppx685; SAppx72. Aylor was directed to comply with 37 C.F.R. §§ 1.76 and 1.78 to properly claim such a benefit. *Id.*

Aylor then filed a replacement ADS on May 21, 2018, but again failed to identify any application numbers. SAppx684; SAppx215; SAppx221. On May 24, 2018, the USPTO notified Aylor, for a second time, that no proper domestic benefit claim had been made, and again, directed Aylor to 37 C.F.R. §§ 1.76 and 1.78. SAppx226. Aylor took no further steps to file a corrected ADS.[9]  SAppx686.

---

[9] The deadline for Aylor to have filed a proper ADS appears to have expired on August 13, 2018, four months after Aylor filed their application (on April 11, 2018).

Accordingly, the Examiner determined that the '246 application had not been afforded the benefit of any claim to domestic priority and finally rejected Aylor's pending claims. SAppx685-686. The Examiner recommended that Aylor consult the relevant regulations and explicitly instructed that a corrected ADS must reference any prior-filed applications by their U.S. application number. SAppx684-687; SAppx699-700.

Following the Examiner's final rejection of Aylor's pending claims, on February 14, 2023, Aylor filed a document titled "Response in RCE3" with an amended ADS that included handwritten application numbers. SAppx711-727. The Examiner responded with an advisory action, noting that prosecution was closed and further consideration would require reevaluating priority dates. SAppx730-731. The Examiner recommended submitting a proper RCE and a typed, corrected ADS, rather than one with handwritten edits, to properly facilitate continued prosecution and ensure that any corrections are legible for consideration. *Id*. Instead, Aylor chose to file a notice of appeal to the Board. SAppx733-738.

> **2.    The Board's affirmance of the Examiner's rejections and issuance of new rejections finding claims anticipated by Williams and obvious over Williams and Time.**

The Board affirmed the Examiner's rejections of the pending claims based on Aylor's failure to establish priority. SAppx4-7. As the Board found, Aylor did not dispute that both ADSs filed during the pendency of the claims were not compliant with 35 U.S.C. § 120 and 37 C.F.R. §§ 1.76 and 1.78, as they did not reference U.S. application numbers in claiming the benefit of domestic priority. SAppx5-6. Aylor instead relied on an amended ADS, filed on February 14, 2023, to argue that the Examiner erred in relying on the prior-filed Aylor applications as prior art. SAppx775. The Board was unpersuaded, noting that the amended ADS was not entered because it was filed after final rejection. SAppx6-7; SAppx731. The Board further explained that, because the deadline to file a proper ADS had passed, a petition and full compliance with the ADS rules were required to establish priority.[10] SAppx6-7 (citing 37 C.F.R. § 1.76;

---

[10] The Board noted that the dispute over whether the ADS is compliant with the USPTO's regulations is a petitionable matter, rather than one that is appealable to the Board. SAppx7. The Board also pointed Aylor to the location of the fillable forms for claiming priority and to the Inventors Assistance Center, who are available to answer questions Aylor may have. SAppx7 at n. 10.

MPEP § 211.02; and MPEP § 211.04). The Board thus affirmed the Examiner's rejections.

The Board also issued two new grounds of rejections, (1) rejecting claims 41, 43, 46, 47, and 49-52 as anticipated by Williams, and (2) rejecting claims 42, 44, and 45 as obvious over Williams and Time. SAppx8-15. The Board largely focused on claim 41 in making its determination. SAppx10-11.

The Board began its analysis by construing claim 41. Under the broadest reasonable interpretation, the Board interpreted the claim as "encompassing a product in which both the betaine and vitamin C are in the same packaging." SAppx10. In reaching that determination, the Board pointed to the '246 specification describing that the "packets can be either single packets for each ingredient (most preferred), single packets for both ingredients (desirable as long as the ingredients are stable), and combinations of two packets." *Id.* (citing SAppx49 at ¶ 30).

The Board also observed that, as claimed, if the ingredients are stored as dry powders, they would not reasonably be expected to "interact" when stored. SAppx10. In particular, the Board noted that the specification states that the presence of Vitamin C and betaine "in single dosage form ... protects the vitamin C and betaine from moisture and air

13

and which prevents them from *interacting until after ingestion.*" SAppx10 (citing SAppx63 at ¶ 108) (emphasis added).

As to the preamble, which recites that the product "can be used in creating a dosage for minimizing the harmful effects of a malignant cancer tumor," the Board determined that it is not limiting and merely provides a statement of intended use as the recited product in the body of the claim is structurally complete. SAppx10-11 (citing *In re Zierden,* 411 F.2d 1325, 1328 (CCPA 1969) and *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir. 2002)). Finally, as to the phrase "consisting essentially of," recited in claim 41, the Board determined that the specification does not disclose any materials that would materially change the novel characteristics of the asserted invention such that they should be excluded from the claimed composition. SAppx11 (citing *PPG Industries v. Guardian Industries Corp.,* 156 F.3d 1351, 1355 (Fed. Cir. 1998)).

Based on its construction, the Board found that Williams teaches each limitation of claim 41 and thus anticipates the claim. SAppx11. In particular, the Board explained that Williams teaches a product that contains both betaine and vitamin C and that the product should be stored in packaging that protects the components from moisture and air. *Id.*;

SAppx8-9 (citing SAppx970 at 2:3-28; *id.* at 2:30-34; SAppx973 at 7:16-18;

and SAppx972 at 6:62-65). The Board made additional findings that

Williams also anticipates claims 43, 46, 47, and 49-52. SAppx11-12.

As to claims 42, 44, and 45, the Board determined these claims are

obvious over Williams in combination with Time. SAppx12-13. The Board

reiterated Williams's teachings of a product that contains betaine and

vitamin C in protective packaging, but also noted that Williams does not

teach that betaine is present in at least one gram amount. SAppx12. But

the Board observed that Time teaches that products may be sold in bulk

and that bulk products are cheaper. *Id.*; SAppx9 (citing SAppx974-975).

The Board explained that it would have been prima facie obvious to an

ordinary skilled artisan at the time the invention was made to market and

package the powder product of Williams in a bulk form, containing

multiple grams of product, because the product would be cheaper and the

amounts more controllable by the consumer as discussed by Time.

SAppx12-13. Moreover, the Board found that an ordinarily skilled artisan

would have known how to adjust the amounts of betaine and vitamin C to

provide the desired amount of nutrient. SAppx13 (citing *In re Aller,* 220

F.2d 454, 456 (CCPA 1955) ("[W]here the general conditions of a claim are

disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation.")).

Because the Board designated its decision as a new ground of rejection, the Board indicated that Aylor could exercise one of the two options provided by 37 C.F.R. § 41.50(b). SAppx7-8. Aylor opted to request rehearing.

### 3. The Board's decision on rehearing denied Aylor's requested relief and reaffirmed the Board's new grounds.

In their request for rehearing, Aylor sought reconsideration of the Board's anticipation and obviousness rejections of the pending claims. SAppx17-23. The Board denied Aylor's requested relief. *Id.*

With respect to the anticipation rejection, the Board was not persuaded by Aylor's argument that Williams's teachings would provide excessive amounts of the other listed ingredients, besides betaine and vitamin C, in its vitamin/mineral composition and would therefore be incompatible with claim 41's preamble that the product is "for minimizing the harmful effects of a malignant cancer tumor" and recitation of the product "consisting essentially of" betaine and vitamin C. SAppx17-19. The Board reiterated that the preamble was not limiting, as it is simply a statement of intended use and does not impose any limitation on the

product claim itself, and Aylor had provided no argument or evidence otherwise. SAppx18. The Board also again explained that the "consisting essentially of" transition phrase is not defined in the specification, nor does the specification disclose any materials that should be excluded from the claimed composition. SAppx19-20. The Board further observed that Aylor does not put the public on notice in a way that allows the public to determine what falls within the scope of the claim and what falls outside the scope of the claim. SAppx20.

Aylor also argued that Williams does not teach that its ingredients are protected "independently." SAppx18. Again, the Board was not persuaded. In particular, the Board explained that, unlike claims 48 and 53, which were not subject to the Board's new ground of rejections, claim 41 does not require the separation of ingredients within protective packaging. SAppx18-19.

As to the Board's obviousness determination, and as relevant to this appeal, Aylor argued Time does not teach or suggest providing in bulk the individual ingredients of any medicinal product. SAppx21. But the Board explained that Time's teachings of the cost-effectiveness of selling products in bulk was relied upon to provide evidence that it would have been obvious to an ordinary skilled artisan "to market and package the powder

product of Williams containing vitamin C and betaine, that was stirred into liquids for oral consumption, in a bulk form containing multiple grams of product because the product would be cheaper and the amounts more controllable by the consumer as discussed by Time." *Id.* (citing Appx10).

## III. SUMMARY OF THE ARGUMENT

The rejection of all pending claims in view of Aylor's prior-filed applications was correct and should be affirmed. Both of Aylor's Application Data Sheets filed during the pendency of the claims failed to reference the prior-filed applications by their application numbers, and thus were not compliant with 35 U.S.C. § 120 and 37 C.F.R. §§ 1.76 and 1.78. Accordingly, Aylor cannot claim the benefit of priority to those applications and the Examiner correctly relied on them as prior art references. Aylor's efforts to excuse themselves from the statutory and regulatory requirements concerning claiming the benefit of priority fail to pass muster. The Board properly affirmed the Examiner's rejection.

The Board also rightly found that representative claim 41 is anticipated by Williams and representative claim 44 is obvious over Williams in combination with Time. Aylor argues that Williams is not anticipatory because it does not teach any function associated with the

taught composition, it includes many more ingredients than betaine and vitamin C, and the individual ingredients in Williams are not separately packaged. But the Board reasonably and correctly construed: (1) the preamble as not limiting because it recites a statement of intended use and the claim's body recites a structurally complete product; (2) "consisting essentially of" as encompassing inclusion of additional ingredients besides betaine and vitamin C, as the specification does not indicate what, if any, ingredients could materially affect the claimed product; and (3) "protective packaging" as including products where betaine and vitamin C are in the same packaging and not separated, as the specification discloses multiple configurations for protective packaging, including where the components are in a single packet. Under the correct claim construction, substantial evidence supports the Board's findings that Williams, which teaches a product containing both betaine and vitamin C and that the product should be stored in packaging which protects the components from moisture and air, renders claim 41 anticipated.

Substantial evidence also supports the Board's determination that claim 44 is obvious over Williams and Time. Aylor argues that it would be counterintuitive to combine Williams with Time because many containers would be required. First, this argument was not raised to the Board and is

thus forfeited. Second, the Board indicated that given the cost savings associated with selling products in bulk and consumers ability to apportion, an ordinarily skilled artisan would be motivated to market and sell the product taught in Williams in such a manner.

Aylor's complaint that the Board's new grounds of rejection were improper is unmerited. The Board followed its regulations and Aylor had a full opportunity to challenge the Board's decision when Aylor opted to request rehearing.

Finally, Aylor's request for patent term adjustment is not properly before this Court because the USPTO has not issued a patent on Aylor's application or made any PTA determination. Aylor's request is therefore premature and should be dismissed for lack of jurisdiction.

## IV.   ARGUMENT

### A.   Standard of Review

The Board's decision may not be set aside unless arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2); *In re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004). Aylor bears the burden of showing that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004).

"Determination of a patent's priority date is purely a question of law if the facts underlying that determination are undisputed." *Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1363 (Fed. Cir. 2014).

Claim construction is a question of law reviewed de novo, subject to substantial evidence review of any subsidiary factual findings. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). During prosecution, claims are given their "broadest reasonable interpretation" consistent with the specification, which this Court reviews to determine whether it is reasonable. *See In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997).

Anticipation is a question of fact that is reviewed for substantial evidence. *See In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997). Obviousness is a legal conclusion based on underlying factual findings. *In re Mouttet*, 686 F.3d 1322, 1330 (Fed. Cir. 2012). "The scope and content of the prior art … are determinations of fact." *Id.*

This Court reviews the Board's legal conclusions *de novo* and the Board's factual findings for substantial evidence. 5 U.S.C. § 706(2)(E); *In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477

(1951) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"Where two different conclusions may be warranted based on the evidence

of record, the Board's decision to favor one conclusion over the other is the

type of decision that must be sustained by this court as supported by

substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970

(Fed. Cir. 2007) (citing *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002)).

## B.   The Board's affirmance of the Examiner's rejections of all the pending claims was proper.

Appellants do not challenge the merits of the rejections of all claims

over the prior-filed Aylor references. Instead, appellants only assert that

those references are not prior art because Aylor is entitled to claim priority

to those references. Under 35 U.S.C. § 120, a patent application must

contain a "specific reference" to a previously filed application to be entitled

to that application's earlier filing date. Among other requirements, the

reference must identify each such prior-filed application "by application

number (series code and serial number)." 37 C.F.R. § 1.78(d)(2); *see also* 37

C.F.R. § 1.76(b)(5). "Section 120 places the burden on the patent

[applicant] to provide a clear, unbroken chain of priority." *Droplets, Inc. v.

E*TRADE Bank*, 887 F.3d 1309, 1317 (Fed. Cir. 2018). Here, Aylor failed

to satisfy that burden, and thus, cannot claim priority back to any prior-filed applications.

The two ADSs Aylor filed during the pendency of the prosecution only recite the publication numbers, and not the application numbers of the prior applications. For that reason alone, this Court should affirm the Board's decision.[11] 35 U.S.C. § 120; 37 § C.F.R. 1.76(b)(5); 37 C.F.R. § 1.78(d)(2).

Aylor makes several arguments in an effort to excuse the statutory and regulatory requirement that an applicant make a specific reference to application number(s) to claim the benefit of priority. None have merit.

First, Aylor makes a series of fairness and notice arguments, asserting that (1) the Examiner's earlier rejections had "assumed" that the present claims are entitled to the benefit of the prior applications (Br. at 2), (2) Aylor never had notice as to why the ADS was deficient (*id*. at 3),

---

[11] To the extent Aylor had sought that the Court determine the sufficiency of their "amended" ADS (SAppx711-727), as they did before the Board, such an issue would be required to be first raised in a petition to the Acting Director and would not be the proper subject of an appeal to this Court. As the Board explained, "the Board only reviews appealable matters, not petitionable matters. *See* 35 U.S.C. § 6; 37 C.F.R. § 1.181; MPEP §§ 706.01, 1201. This dispute over whether the ADS is compliant with the C.F.R. requirements is a petitionable matter rather than an appealable one." SAppx7; *see also In re Hengehold*, 440 F.2d 1395, 1403 (CCPA 1971)).

and (3) Aylor did not have an opportunity until much later in prosecution to argue for sufficiency of their priority claim (*id*.). These assertions are not accurate. There is no indication that the Examiner had assumed a prior iteration of the claims (pending in that earlier April 15, 2019, office action) enjoyed the benefit of such priority. SAppx263-285. Further, as the Examiner and Board explained, Aylor was notified as early as May 8, 2018, and May 24, 2018, that they had not established any domestic benefit to a prior application. SAppx6; SAppx685; SAppx72; SAppx226. At that time, Aylor was also specifically directed to the relevant regulations (37 C.F.R. §§ 1.76 and 1.78) which explain that an applicant is required to identify the application number of a prior-filed application to claim domestic priority. *Id*.

Second, Aylor argues that there is nothing in the regulations indicating that there is only one way to provide the application number information and that the cited publication numbers should have been sufficient. Br. at 2. But the USPTO's regulations are precise—Section 1.76(b)(5) states that a domestic priority claim must include the "application number" and Section 1.78(d)(2) requires identification "by application number (consisting of the series code and serial number)." Moreover, this Court declined to adopt a more lenient test in *Medtronic* for

interpreting the sufficiency of a priority claim. *Medtronic*, 741 F.3d at 1365-66. The Court concluded that such a standard "runs afoul" of § 120 and § 1.78, which require a specific reference to each prior-filed application in precise detail, down to the application number. *Id.* at 1366.

Third, Aylor asserts that the Examiner's rejection should not be based on a "formal" matter, rather than the validity of the claims. Br. at 3. But as the Board explained, due to Aylor's deficient ADS, Aylor cannot receive the benefit of priority, and thus the Examiner's unpatentability determination must stand. SAppx5. And as explained by the Examiner and the Board, Aylor could have elected to file a petition to amend their ADS and a proper request for continued examination following the Examiner's final rejection, but Aylor chose not to.[12] SAppx7; SAppx731. This Court has rejected a similar argument—that failure to comply with 35 U.S.C. § 120 is a "hypertechnical violation" that should not be the basis for invalidating claims. *Droplets*, 887 F.3d at 1316. This Court explained that "'[a]lthough § 120 might appear to be a technical provision,' courts have long-recognized that 'it embodies an important public policy,' and

---

[12] Aylor also complains that, despite several attempts, Aylor was unable to insert the application numbers in the ADS form. Br. at 2. But, as noted by the Board, Aylor could have contacted the Inventor's Assistance Center for assistance in preparing the form. SAppx7, n. 2.

thus have required strict adherence to its requirements." *Id.* (citations omitted).

The Examiner's rejection of the claims should be affirmed.

**C.    The Board's determination that Williams anticipates representative claim 41 is supported by substantial evidence.**

The Board properly determined that Williams anticipates claims 41, 43, 46, 47, 49-52. SAppx8-12; SAppx17-21. Because Aylor does not appear to raise specific arguments as to the other claims subject to the rejection, the Acting Director treats claim 41 as representative.

Based on the claim language and the specification, the Board correctly determined that the preamble of the claim is not limiting, the transitional phrase "consisting essentially of" does not exclude additional ingredients beyond betaine and vitamin C, and the "protective packaging" does not require that the ingredients be separately packaged. SAppx10-11. The Board found that Williams teaches a product that contains both betaine and vitamin C and that the product has packaging that protects (the ingredients) from moisture and air. SAppx11; SAppx970 at 2:3-28; *id.* at 2:30-34; SAppx973 at 7:16-18; and SAppx972 at 6:62-65. As such, Williams anticipates claim 41. *In re Robertson,* 169 F.3d 743, 745 (Fed. Cir. 1999).

None of Aylor's arguments related to the Williams rejection pass muster. First, Aylor argues that there is nothing in Williams that suggests any "special function" of the disclosed composition containing betaine and vitamin C, and thus does not anticipate the claim. Br. at 5. But as explained by the Board, claim 41's preamble, which recites that the product "can be used in creating a dosage for minimizing the harmful effects of a malignant cancer tumor," is not limiting and merely provides a statement for an intended use for the structurally complete product recited in the body of the claim. SAppx10-11; *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir. 2002). Aylor provides no reason that the preamble is limiting beyond a bare argument that Williams fails to suggest a special function.

Second, Aylor argues that claim 41's recitation of the transitional phrase "consisting essentially of" precludes the inclusion of the compounds in the mineral/vitamin composition disclosed by Williams. Br. at 6. The phrase "consisting essentially of" limits claim scope to the claimed ingredients and "unlisted ingredients that do not materially affect the basic and novel properties of the invention." *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354 (Fed. Cir. 1998). Aylor has the burden of showing that the introduction of additional components would materially

change the characteristics of the invention. *See In re De Lajarte*, 337 F.2d 870, 873-74 (CCPA 1964). Aylor did not meet this burden. Aylor makes a bare argument that the inclusion of Williams's many other compounds would materially affect the characteristics of the invention. But as the Board explained, the '246 application includes no disclosure of any materials that should be excluded from the claimed composition. SAppx10-12; SAppx19. Aylor's application does not put the public on notice as to what would fall outside the scope of the claim. SAppx20. Thus, claim 41 is not limited to a product consisting of (only) betaine and vitamin C; and Williams, which teaches a product containing both those ingredients, among others, anticipates. SAppx8; SAppx11; SAppx970 at 2:3-28.

Third, Aylor asserts that the claims require having protective packaging protection for "each" ingredient from moisture, and that Williams fails to teach separate packaging for betaine and vitamin C. Br. at 6. But, as explained by the Board, claim 41 does not require the separation of ingredients with separate protective packaging. SAppx18. Based on the language of the claim, and the specification (which states that the packaging can be a single dose packet containing both ingredients and that "a single dosage form . . . protects the vitamin C and betaine from moisture and air and which prevents them from interacting until after

28

ingestion"), the Board construed claim 41 as encompassing a product in which both the betaine and vitamin C are in the same protective packaging and that, when stored as dry powders, the ingredients would not be expected to interact. SAppx10; SAppx49 at ¶ 30; SAppx63 at ¶ 108. The Board found that Williams teaches a dry powder mixture of a composition containing betaine and vitamin C and to "seal it in a metal foil pouch so that neither moisture or air can get to the composition until it is ready for use." SAppx9; SAppx11; SAppx972 at 6:62-65. Aylor's argument fails because it is not based on limitations appearing in the claim. SAppx18-19; *In re Self,* 671 F.2d 1344, 1348 (CCPA 1982).

The Board also differentiated claim 41, which does not recite the separation of ingredients, from claims 48 and 53, which were not subject to the Board's rejection. SAppx18; SAppx27 at claim 48 (reciting "wherein said packaging is a foil packet with a separate pocket for each of said ingredients"); *id.* at claim 53 (reciting "wherein said protective packaging is a foil packet with a separate pocket for each of said ingredients.") The record does not compel Aylor's import of unrecited limitations.

Aylor's remaining arguments as to the Board's anticipation determination (*see* Br. at 5) were not presented to the Board (see SAppx840), and thus are forfeited. *In re Google Tech. Holdings LLC*, 980

F.3d 858, 863 (Fed. Cir. 2020). Even if Aylor's remaining arguments are not forfeited they fail on the merits. Aylor appears to argue that (1) Williams teaches that betaine is an "enzyme" which is incorrect and would make it unlikely that a skilled artisan would include any betaine in the Williams compound, and (2) that the levels of betaine and vitamin C cannot be adjusted to meet the limitations of the claim. Br. at 5. As to the first argument, even if the recitation of "enzyme" was an error in Williams, the reference still clearly discloses that "betaine" be included in the mineral/vitamin composition. SAppx970 at 2:22; SAppx971 at 3:7. As to the second argument, claim 41 does not require any particular amount of betaine and vitamin C. SAppx27 at claim 41.

### D. Substantial evidence supports the Board's determination that representative claim 44 is obvious over Williams and Time.

The Board's determination that claims 42, 44, and 45 are obvious over Williams in combination with Time is supported by substantial evidence. SAppx12-13; SAppx21-22. Because Aylor only appears to take issue with Time's teaching of bulk products and the motivation to combine Time with Williams, the Acting Director is treating claim 44, which recites "wherein each of the said ingredients betaine and vitamin C is in a bulk

package with instructions to measure out at least about one gram of each of said ingredients," as representative. SAppx27 at claim 44.

With respect to claim 44, the Board found that Williams teaches a product that contains both betaine and vitamin C in powder form, the use of at least one gram of vitamin C, and that the product should be stored in packaging that protects from moisture and air. SAppx12. The Board turned to Time, which teaches that products may be cost-effectively sold in bulk and later apportioned, to find that an ordinary skilled artisan would have been motivated to save money by marketing and packaging the products taught in Williams in bulk form, which a consumer could then apportion to their desired amount (e.g., at least one gram of each nutrient). SAppx12-13.

Aylor argues that it would have been counterintuitive to combine Williams with Time and sell products in bulk because Williams contains so many ingredients, which would require (multiple) bulk containers. Br. at 6. While this argument appears to be different than the argument Aylor raised to the Board (*see* SAppx841; SAppx22), and thus forfeited (*Google*, 980 F.3d at 863), it is nevertheless unavailing. As the Board found, the claims do not require separate packaging for each ingredient. SAppx18-19. The Board also found that the powder product of Williams could be

disseminated in a (single) bulk container and then apportioned, as desired,

by the consumer. SAppx21. And that a skilled artisan would have been

motivated to market the product as such to save costs and give more

control over the amount of product to the consumer. *Id*; SAppx13. The

Board also explained that "where the general conditions of a claim are

disclosed in the prior art, it is not inventive to discover the optimum or

workable ranges by routine experimentation." SAppx13 (citing *In re Aller,*

220 F.2d 454, 456 (CCPA 1955)); *see also In re Ethicon, Inc.*, 844 F.3d

1344, 1351 (Fed. Cir. 2017) (explaining that the "normal desire of artisans

to improve upon what is already generally known can provide the

motivation to optimize variables such as the percentage of a known

[ingredient] for use in a known [combination].").

## E.    Aylor's additional arguments lack merit.

### 1.    The Board correctly issued a new ground of rejection and Appellants exercised their opportunity to be heard.

Aylor complains that the Board's new ground of rejection was not

proper and that it prevented appellants from responding to the rejections

during prosecution or from having the rejections reviewed by another

panel of Administrative Board Judges. Br. at 4. But the Board followed its

regulations and Aylor had a full opportunity to challenge the Board's

decision when they opted to request rehearing instead of reopening prosecution.

Under the Patent Act, the USPTO is "responsible for the granting and issuing of patents." 35 U.S.C. § 2(a)(1). Pursuant to its authority, the USPTO undertakes the examination of patent applications based on the statutory requirements of patentability. *Id.*; 35 U.S.C. §§ 101-103, 131-134.

To enable the USPTO to carry out its responsibilities, Congress conferred on the USPTO authority to establish regulations that "govern the conduct of proceedings in the Office." 35 U.S.C. § 2(b)(2)(A). As relevant here, under 37 C.F.R. § 41.50(b), the Board is allowed to designate a new ground of rejection of a claim that was not previously made by the Examiner. When the Board enters a new ground of rejection, an applicant is given the choice of either (1) reopening prosecution; or (2) requesting rehearing by that panel. 37 C.F.R. § 41.50(b). This general rule has long been in effect, as this section was added to generally incorporate the requirements found in former Rule 196. *See* 69 Fed. Reg. 49960, 49965 (Aug. 12, 2004) ("Section 41.50 is added to generally incorporate the requirements of former Rule 196."); *see also* 24 Fed. Reg. 10332, 10345 (Dec. 12, 1959). The 2011 amendments again did not substantively change

what constituted a new ground of rejection, but did amend § 41.50(b) to
add a heading and further clarify the Board's authority to enter a new
ground of rejection. 76 Fed. Reg. 72270, 72276-79 (Nov. 22, 2011).

After the Board entered a new ground of rejection under 37 C.F.R
§ 41.50(b), Aylor had the opportunity to respond when they sought
rehearing of the Board's decision rather than reopen prosecution.
SAppx839-841. On rehearing, Aylor argued that Williams does not
anticipate claim 41 because Williams lacks protective packaging for each
ingredient and includes non-essential ingredients excluded by the
"consisting essentially of" language. SAppx840. Aylor also argued that the
Time article added nothing to Williams for purposes of obviousness. *Id.*
The Board directly addressed Aylor's arguments and reiterated its
determination that claims 41, 43, 46, 47, and 49-52 are unpatentable
under 35 U.S.C. § 102(a)(l) as anticipated by Williams, and that claims 42,
44, and 45 are unpatentable under 35 U.S.C. § 103 as obvious over
Williams and Time. SAppx17-23.

### 2.    The Court lacks jurisdiction to decide Aylor's patent term adjustment request.

Aylor appears to seek patent term adjustment (PTA) for the
application on appeal, citing a request for "an extension of life" resulting

from a notice of abandonment and subsequent revival of the application.[13]

Br. at 6. PTA is determined only once a patent is ready to issue. *See* 35 U.S.C. § 154(b); 37 C.F.R. § 1.705. Because no patent has issued from Aylor's application, no PTA determination has been made. Moreover, challenges to PTA determinations must be brought in the Eastern District of Virginia after the USPTO Director's decision on reconsideration. 35 U.S.C. §§ 154(b)(3)(B)(ii), (b)(4). Aylor's PTA request is therefore premature, not properly before this Court, and should be dismissed for lack of jurisdiction. *See* 28 U.S.C. § 1295(a).

## V.   CONCLUSION

For the foregoing reasons, the Board's decision finding claims 41-53 of the '246 application unpatentable should be affirmed.

Dated: April 4, 2025                     Respectfully submitted,

                                         /s/  Kakoli Caprihan
                                         AMY J. NELSON
                                         Acting Solicitor

---

[13] Relatedly, Aylor appears to be seeking a declaration from the Court that the notice of abandonment was improper. Br. at 6. As Aylor notes, it filed a petition to revive the application. Br. at 6. The USPTO granted that petition. SAppx640-641.

KAKOLI CAPRIHAN
MICHAEL S. FORMAN
MONICA B. LATEEF
Associate Solicitors

Office of the Solicitor
U.S. Patent & Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the*
*U.S. Patent & Trademark Office*

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Fed. R. App. Proc. 32(a)(7) that the foregoing BRIEF FOR APPELLEE, ACTING DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE complies with the type-volume limitation required by the Court's rule. The total number of words in the foregoing brief, excluding the table of contents and the table of authorities, is 7,392 as calculated using the Word® software program.

/s/ Kakoli Caprihan
Kakoli Caprihan
Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April, 2025, I electronically filed the foregoing Brief for Appellee using the Court's CM/ECF filing system and was also served by First-Class Mail on the same day to the following pro se Appellants:


Robyn Aylor Haines
207 Foxwood Lane
Franklin, TN 37069

Leigh Heather Makover
1804 Eggum Road
Mt. Horeb, WI 53572


/s/Kakoli Caprihan
Kakoli Caprihan
Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035